I'm attorney Tom Gill. And if it pleases the court, may I explain I have some laryngitis and a little difficulty today. So if I need to, I will speak up. Now, I represent Mr. Batista, the appellant in this matter. And as the court is aware, last week it issued an order directing counsel to consider the case of Kramer v. Consolidated in light of the facts of Batista. And therefore, that reaches the issue of remand. I'm sorry? I didn't hear what you said. The issue of remand. Oh, okay. So I would prefer to spend my time addressing that issue, since if the court were to find that, which was not addressed, by the way, in our appellate brief, which I'm chagrined about, but it simply wasn't. And I'm, of course, very pleased that you found in our briefs that Kramer was missing. Kramer is critical. Kramer resolves this matter. We're a public service. Thank you so much. And Mr. Batista submits that Kramer resolves this matter because based upon Kramer and its progeny, there's absolutely no legal predicate now for 301 preemption, which is, of course, what the district court found. And I'd like to explain that. The defendants concede in their pleadings filed in the district court that there's no basis for 301 preemption until plaintiff filed his opposition to defendant's motion for summary judgment. They say he referenced the terms progressive discipline and just cause, and that upon the mention of those terms in his opposition to the motion for summary judgment, which had been filed in state court, defendants then removed it to federal court. Plaintiff brought a motion for remand. The district court ruled on that issue twice. Kramer had been decided on bonk August 27, 2001. The remand issues were briefed twice in October 2001 and December 2001. No one caught Kramer, including the district court. And it wasn't caught on appeal. But your honors did. The point I'm getting at is defendants refer to the terms just cause, progressive discipline, investigation. And they refer to them as being in the collective bargaining agreement. But there's a fly in that ointment. In plaintiff's pleadings, he never cited to the collective bargaining agreement. I guess it's caused it's called artful pleading. He never cited to anything but two sources. I'm holding them up. Stewart Enterprises' own handbooks. And I can cite to the pages in just a moment. And his declaration. For instance, just cause is what he understood was a standard based upon his 16 years experience working as a grave digger and a yard worker for Stewart Enterprises. So he cited in his opposition, not to the collective bargaining agreement, which isn't triggered. That's in the pleadings. That's in the pleadings. Pardon? How about later? Never. Ever cited? Never cited to the collective bargaining agreement. The court, the district court, picked up on what the defendants did, which is to cite to the collective bargaining agreement. How did the collective bargaining agreement get in the record? Without authority. How did the collective bargaining agreement get in the record? Because defendants cited to it. And they cited to it. I'm sorry. They cited to it as if plaintiff had cited to it, which he didn't. The district court picked up on what defendants had said. And then the district court said it was not until plaintiff filed his opposition to defendants' motion for summary judgment on August 30, 2001, that plaintiff first relied on the just cause and progressive discipline provisions of the CBA. In his opposition for the very first time, plaintiff claimed that defendants breached the just cause and progressive discipline provisions of the CBA. No. No. He cited to the handbooks, Stewart's own handbooks, for progressive discipline and just cause. But presumably, Stewart's handbooks reflected the collective bargaining agreement. Since ordinarily, if something is set up by a collective bargaining agreement with regard to the employees that are covered by the collective bargaining agreement, the employer is bound by the collective bargaining agreement. And is the language in those? Are those handbooks in the record? They're not in the excerpts. But in the record. I'm unsure. How did the district court get the idea that the plaintiff had cited to the collective bargaining agreement? From defendants' opposition to the motion to remand. In other words, defendants saw, and I quote, and this is from defendants' own brief. They attached pages of plaintiff's brief. Page two. Thus, Stewart violated its own policies and its haste to rid itself of the thorn in its side. Page seven. Stewart violated its own disciplinary policies, citing to, in both instances, Mr. Batista's deposition testimony. So what – well, since it's not – and we don't know if it's in the record. It's a little bit odd to be talking about it. But did the handbooks and the declaration use exactly the same language as the collective bargaining agreement? In part, yes. In part, no. For instance, progressive discipline, you know, warning, and then suspension. Well, what about the part that the defendants are relying on, which is to say that there's a dispute, that is, no steps need to be followed, no warning notices need to be given if the discharge is dishonesty or intoxication in support of the misconduct? Right. Is that in the handbook that you cited? Or is that in the declaration? The declaration we know is in the record, so that's a better source. Yes. And that provision is in the declaration? Yes. When I just read you? I'm sorry? The language I just read you, Section 40. What I'm trying to find out is, is there a dispute? Ultimately, what do you think the ultimate question under Cramer is? Why do you think Cramer is so dispositive? Well, Cramer says that in order for 301 to preempt, that 301 preempts only claims founded directly on rights This Court has been cited by the Third Circuit, the Tenth Circuit. It is now the preeminent case on the law regarding preemption under Section 301. And this Court says in Cramer that it disavows all prior decisions respecting preemption. Now, that's not the Court's words, that's my words, but it's right to the point. And it articulates the new law. A defendant cannot merely by injecting a Federal question into an action that asserts what is plainly a State law claim, transform the action into one arising under Federal law. Of course, that is a quote from the Supreme Court. It's not new law. I'm sorry? What you just read is a quote from a Supreme Court case. It is not new law in Cramer, is it? No. No, it shows it's Cramer at 690 quoting the Supreme Court. Yes. Defendant cannot create a dispute as the meaning of the terms of the collective bargaining agreement by picking out terms. In short, this is Cramer at 694. This is a class example of a defendant's attempt to inject a Federal question into an action that asserts what is plainly a State law claim in order to transform the action into one arising under Federal law. The plaintiff's claim and Mr. Batista's claims are FIHA discrimination claims. But there'd be no doubt that the only factual prong defendants are relying upon is the pretext argument under McDonnell Douglas that the plaintiff must prove in order to rebut the articulation of a legitimate nondiscriminatory reason. What Cramer is clearly doing, I suggest, is mandating that State law claims be left alone unless the claim itself, even though it's a State law claim, can only be resolved by going to the heart and soul of a collective bargaining agreement. For instance. In this instance, go ahead, do your for instance. Go on. Go ahead. Well. Here's Firestone. 281 F. 3rd, 801.  281 F. 3rd, 801. 9th Circuit. Here's a lady, a meter reader, looking to collect overtime. But she was in a bargaining unit. And there was a collective bargaining agreement. And this court said that resolution of plaintiff's claim cannot be decided by mere reference to unambiguous terms of the agreement. The collective bargaining agreement, these are my words, covered the definition of overtime. And it also covered what is called the regular rate. So a State court trying to assign overtime pay to the meter reader would necessarily have to go to the collective bargaining agreement to determine what the regular rate of pay means. All right. So all these decisions are very fact specific. And essentially what you're. They're fact specific. Yes. And you're in the opposition in the State court, you came in and you said, and you've said it, you've said it repeatedly also in briefs in this court. And I think in this court you may have cited the collective bargaining agreement, although I don't have the briefs in front of me right now. But even leaving that aside, assuming that you simply said they weren't following their own rules, there, you injected, you made this point part of your affirmative case, essentially. Yes. In other words, it wasn't raised as a defense, given the way McDonnell-Douglas works. Essentially, the debunking of the pretext is part of your, the plaintiff's case. And you said one way we're going to prove our case is we're going to prove that the defendant didn't follow their own rules. Right? So that's sort of equivalent to the overtime, to saying in the other case, they didn't pay us overtime. So then the question is, what are their rules and where are they coming from? Now, it's true that you didn't refer the collective bargaining agreement, but that's where the rules were necessarily coming from, no? Well, you know, I've got two responses in mind, because I think that pretext is actually an adjunct of a defense that the defendants has to. No, because the whole McDonnell-Douglas thing is not, is simply part of the affirmative case. I mean, it's set up with people going back and forth. But in the end, as we know from, not from Cramer itself, but from other cases, the, when you go to the jury, it's the plaintiff's burden to prove discrimination. And you were trying to prove discrimination in part by saying the employer's reason is a lie. And here's how we know it. Yes. Right? Okay. And what plaintiff appellant here is saying is that there is no need to go to the collective bargaining agreement in order to know that those violations occurred. Progressive discipline is spelled out in the handbook. We know, we don't know, we don't need to go to the collective bargaining agreement. It doesn't matter where it came from. They adopted it as their own quite apart from the collective bargaining agreement, is what you're saying. Yes. Yes. When the district court eventually decided this case, did the district court rely on the, in the end, was the collective bargaining agreement ever referred to in the decision of this case? In the substantive decision? Yes. Yes. Well, why isn't that the answer, then? I'm sorry, I didn't hear the question. Why isn't that show that it was necessarily to be decided if it was decided? I'm not following the question. All right. What did the district court do with the collective bargaining agreement? The district court stated, where are you looking now? I am, I'm sorry, I don't have the excerpt from the record, but it's the court's order of January 4, 2002. And it's on page two. And the court says, resolution of plaintiff's contentions requires interpretation of the CBA. That's the header. What page are you looking at, then? Page two of the January 4, 2002 order. What line? Line three. Under there, the court says, in his opposition to the motion for summary judgment, plaintiff alleged that Stewart Enterprises violated the just cause and progressive discipline provisions of the CBA. No, plaintiff did not. Does this CBA have an arbitration provision? Is the whole collective bargaining agreement in the record or just a couple pages? The whole collective bargaining agreement is in the record. Does it have an arbitration provision? It does. Yes, it does. So the ordinary ‑‑ if you really needed to decide the collective bargaining agreement, the ordinary result in a 301 case in this instance would not be to decide this case at all, but would be to dismiss it for failure to arbitrate. Well, Your Honor, like ‑‑ That's how it is. He has a choice of forms. I'm sorry? He has a choice of forms. The plaintiff could have arbitrated, or the plaintiff could have did what he ended up doing, which is filing a complaint in the state court. In the ‑‑ You mean if there's an arbitration clause as to disputes in the collective bargaining agreement, you can ignore it? Yes. Here's ‑‑ Well, you can ignore it if you're right that the FEHA claim is independent. But now, I mean, it gets very complicated, because if in fact you're invoking the CBA, then you can't ignore it. Well, how about in Humble, 305 F. 3rd, 1004, Ninth Circuit? It states, Humble need not rely on her collective bargaining agreement to enforce the, quote, parallel, independent, and more extensive, reasonable accommodation duties established by the WLAD. And I inserted, because I looked it up, Washington's law against discrimination. There is no dispute that the duty to accommodate workers is nonnegotiable under Washington law. And by the way, this court in Humble held that there was no preemption under 301. Boeing, Humble v. Boeing Company, Boeing contended that Humble needed to refer to the collective bargaining agreement to interpret which jobs were open if her accommodation took the form of a transfer to a light duty position. And this court said, no. First, we have held a CBA provision does not trigger preemption when it is only potentially relevant to the state law claims, without any guarantee that interpretation or direct reliance on the collective bargaining agreement agrees with its terms. Citing this court in Himeno 66 F. 3rd, 1514. What were you just reading from? Humble v. Boeing, 305 F. 3rd, 1004. And this court in Humble held that there was no preemption, even though there was an arbitration, even though Humble could have gone through the union grievance arbitration process. And my point was slightly different, which is that if there were otherwise 301 preemption here, that if there's an arbitration clause, what's odd about this case was that the district court held that there was 301 preemption. But she went ahead and decided what she saw as the CBA question instead of sending it off to an arbitrator. That's a very odd way to handle the problem. Now, your argument is that there is no 301 preemption. So you would just go back to the State court and you'd say that any CBA issue is just incidental or it doesn't really exist at all. But that's a different point. It may not even arise to prove pretext. Gosh, if there are two points I wanted to make, because you were correct on. Oh, you know, you're way over your time. May it please the Court. My name is Tara Wilcox. I represent Stewart Enterprises, Inc. and Ms. Robin Brandt. The ruling of the district court in this case should be affirmed for a variety of reasons. First, the district court did have subject matter jurisdiction over this case because Mr. Batista, not Stewart, is the one who injected specifically language, concepts, and requirements that arose under the collective bargaining agreement. He injected those specifically in reference to his argument that his age discrimination claim had merit in that Stewart acted with animus and that its reason for firing him was pretextual. Now, he just said he didn't. How do we clear that up? Okay. At the State court level, his opposition referenced that Stewart violated its own policies with respect to providing progressive discipline to him. Stewart and Ms. Brandt and the other remaining defendant removed the case to Federal court. We briefed it. The court accepted jurisdiction. In the summary judgment papers that were filed at the district court level, Mr. Batista, again, in his opposition at page 20, referenced again the idea that progressive discipline had not been applied to him and that, therefore, Stewart had violated its own policies and that that violation in and of itself was evidence that the termination was pretextual. Now, his own policies doesn't reference the collective bargaining agreement. That's correct. So what's the reference to the collective bargaining agreement? Mr. Batista apparently makes the argument that he doesn't need to refer to the collective bargaining agreement, that he can simply resort to the employee handbook instead. The employee handbook and the record. It is. That is not the case. Because Mr. Batista is a unionized employee, as a matter of law, the employer does not have the right to unilaterally impose terms and conditions of his employment. Any terms and conditions of employment that apply to Mr. Batista had to have been negotiated Employers sometimes have policies that aren't consistent with the collective bargaining agreement. That may be, but in this case, the collective bargaining agreement is the document that controls. Mr. Batista was a unionized unit member. The collective bargaining agreement is the document that controls. But suppose Mr. Batista came in and showed that although the collective that in fact on the ground, Mr. Batista, the employer always gave progressive discipline to everybody, and that was his showing. And your answer is, oh, well, that may be, but the collective bargaining doesn't require us to give progressive discipline if there's a willful misconduct. Your defense would be irrelevant, wouldn't it? To what he's trying to prove, which is discrimination. No, I don't think it would be irrelevant at all. I think in that situation, if he's arguing that pretext can be shown by a failure to follow the employer's own policy. That is what you usually do. Your policy being what you usually do. Correct. In this case, we look to where that policy is embodied. In Mr. Batista's case, because he is a bargaining unit member, that policy is contained in the collective bargaining agreement. Not the employee handbook, which deals with non-unit employees, but rather the collective bargaining agreement negotiated between the union and Stewart. But what I'm asking you is that for purposes of – this is sort of peripheral anyway as to how it's relevant to a motive question. But I guess it's relevant to the motive question in showing that if you usually do X and this time you did Y, you're treating me specially. And so, therefore, it's more likely that you're being protection. I guess that's the connection. So given that connection, what's relevant is what you ordinarily do, not what you've promised somebody else you're going to do, right? It's hard to argue – I mean, it's hard to address in a vacuum. Here, Mr. Batista claims he never had any discipline, so we don't have anything to compare it to. He claims his record was stainless. And so we don't have any past practice in terms of whether he had received previous write-ups to compare it to. Well, there was no past practice. His allegation is that when other people do what I did, you give them progressive discipline and you didn't give it to me. But that's not what he did here. He did not argue that other people were getting progressively disciplined and he wasn't. He wasn't comparing himself to other people. He was simply making the very bold-faced argument that Stewart policy requires that before Stewart can terminate me, it must give me progressive discipline. He was not comparing himself to anybody else. This wasn't a case of younger people were being treated differently. This was not a similarly situated type analysis. It was purely employer did not follow its policies, so he says, therefore, that in and of itself is pretextual. And we know from this Court's opinion in the Rose v. Wells Fargo case where there is some suggestion that an employer has failed to follow his policies, that can be evidence of pretext. So the argument he was making there, if he was correct, would have been a plausible way to go about showing pretext. I don't believe that simply because there happens to be an employee handbook that addresses the rights of non-unit employees that may or may not have corollary provisions. Is that true? Is that what the handbook says? There is language in the employee handbook that says that the employer can adopt or may go through progressive discipline but does not, is not bound by that. It's essentially an employer has the discretion to take whatever action is appropriate up to and including. Does the employee handbook say that that is only a question on union employees? I don't know if it says that, but like I said, legally an employer is not able to construct terms and conditions. But an employer can certainly put out an employee handbook that puts its understanding of what's in the collective bargaining agreement, since this is what we're going to do. Well, the problem is this. Even if you look at the employee handbook, which I do not maintain applies to Mr. Batista because he is not a unit, because he is a unit employee. But even if you look at the employee handbook, that doesn't answer the question that Mr. Batista was raising in opposition to summary judgment. He was raising the issue that the company failed to follow that policy. So we need to look and see what he's referring to. Employee handbook doesn't shut the door on that. He's wrong. I mean, he's saying look at this handbook and if this shows that that's the only thing he's injected is this handbook. You're saying, well, he's wrong. That doesn't apply to him. That's not his claim. It's your claim. Okay. Well, let's put it this way. Even if the employee handbook does apply to him, the analysis doesn't end there. If he – there's no dispute that the collective bargaining agreement does apply to him. Perhaps what the question then may be is does the employee handbook also apply to him. If we address the employee handbook first, we see that on its face perhaps he's wrong. We also – I don't think it's disputed. We still then have to look to the collective bargaining agreement, which there is no dispute that did apply to him. And we have to address that also to see if by any chance pretext can be shown through a violation of the policy stated in that document. In that – Wait a minute. He's not raising it. Right? You certainly have no obligation to make a case for him better than he's made it. So if he isn't claiming that there was anything in the collective bargaining agreement itself, which does better for him than the handbook, then if you choose to inject it, then as Cramer – then to that degree, he must be right about Cramer, because Cramer says if you're going to come up with something that isn't – doesn't inherit his cause of action, that's not his problem. Well, like I said, the – our main – our – we have maintained all along that the employee handbook does not apply to unit employees. We maintain the – Well, then the answer should have been then he loses. You didn't violate the policy that he referred to because it doesn't apply to him, period. The CBA never comes in there. But for us to – he doesn't specify where that policy comes from. His opposition is very vague. He doesn't mention the employee handbook. He doesn't mention the collective bargaining agreement. He leaves it up in the air. In order for us to meaningfully respond to that and refute that, we have to cover our bases. He's not limiting it to just the employee handbook. So we need to address, at least in part, what is going on in terms of the collective bargaining agreement to see whether there is some possibility. But he never mentions the collective bargaining agreement. It seems to me when we look, Kramer says whether the employees' state tax law privacy – privacy challenge necessarily required interpretation of relevant provisions of the collective bargaining agreement. And he never referenced it in his complaint. He never referenced it in his opposition to the employers' statement. So it seems awfully tangential to get to the collective bargaining agreement through this way because it has to involve an interpretation, not just a reference to the collective bargaining agreement. It has to require an interpretation of the collective bargaining agreement, and he never references it. I understand that. And respectfully, I would disagree with the idea that Kramer somehow suggests that this case is not preempted. To address what you said, first off, you're right. He does not mention the words collective bargaining agreement in his papers. What I liken this to are the line of cases, and I believe Alice Chalmers v. Lewick is one of those cases, I believe, where the court found that simply because an employee plaintiff doesn't refer to a union doesn't mean that he has a contract claim outside of the union contract. But that's the only contract out there. There is no other contract. I'm sorry? Because that's the only contract out there. There's no other contract. Exactly. And so, therefore, he can't simply hide the words collective bargaining agreement and get around 301 preemption. And I believe the same holds true for this. He's arguing, and I think that's another difference between this case and Kramer, he's arguing that these policies exist that Stewart violated, and, therefore, that showed pretext. In order for us, again, to address that claim, we need to look at what documents, what policies he might be referring to so that we can show that there was no pretext. The other difference with Kramer is, in Kramer, you're right, it was a state law invasion of privacy claim. And what happened there was consolidated freightways. The defendant was the first party to bring up the idea that there were somehow provisions in the collective bargaining agreement that kind of somewhat addressed or touched on the same type of privacy concepts and expectation of privacy concepts that the Kramer plaintiffs were asserting. That's not what happened here. We didn't raise 301 preemption as a defense. What happened here is we believe that Mr. Batista instead is the one who injected those arguments into this case. He just simply put the collective bargaining agreement label on it to refine exactly what he was talking about. I guess I have two questions. One is the one I asked your opponent. What's odd about this is that once the CBA came into the case or assertively came into the case, ordinarily what happens in 301 cases at that point is you say, well, was this arbitrable? And then often, although I'm not sure, there's a footnote in Kramer that says you don't always have to do this, and I would think maybe you don't have to, but at least you have to deal with the question of how do you decide the CBA issue when it's committed to arbitration? But here the district court just went trooping along and decided it herself, which is, I gather, exactly what you're not supposed to do. So that's one problem. I don't know that I understand 301 preemption to require that once the case is preempted, it necessarily needs to be kept in arbitration. That's the whole point. I mean, that's the strong part of preemption, of Alice Chalmers, right? That's the teeth in it, is the reason why we're being so tough about this, is because under federal common law of collective bargaining agreements, these districts are supposed to go to arbitrators, not courts, federal or state. So, and to me, the fact that this didn't happen here is not so much an error, but an indication of the peripheral nature of the CBA issue here. Well, I disagree with that. First off, I'm not, this is, I don't know that this is in the record. I don't believe it is. But Mr. Batista, as a side note, did, in fact, pursue a grievance. I understand that. And I think he... But that's certainly not a reason for providing 301 preemption. Of course not. No, of course not. But in other words, I don't think, I think he abandoned that before it actually went to the arbitration process. And my understanding under the 301 body of law is that the district court still can entertain a case just as it otherwise would. What 301 does is it takes that case before... No, you're just wrong about that. I mean, in the sense that the whole... And Alice Chalmers has two parts, right? And says, first of all, this is Federal common law. But second of all, and really important, there's the arbitration issue. And the fact that to have the courts deciding this when under the collective bargaining agreement, it's the arbitrator that's supposed to be deciding it. Now, then there are two... Then there's a fork in the road as to whether at that point you just kill off the case or, as the footnote in Kramer suggests, but I don't know if there's any case I'm not suggesting any of that should have happened here. But I'm suggesting that it didn't. The fact that it didn't occur to anyone is some indication of how peripheral this issue was to the case. Yeah. I don't know that we have any evidence in the record that there was an arbitration provision. Frankly, I would be stunned if there wasn't, because that certainly... Oh, he filed a grievance. Yeah. But I'd like to address also Judge Hugg's comment with respect to Kramer requiring an interpretation of provisions as opposed to a mere reference to. And I think here we have a very obvious need to interpret the competing provisions of the collective bargaining agreement. We have 401, which states that Stuart must use progressive discipline before terminating its employees. We then have to weigh that against 404, which says that progressive discipline need not be followed if the employee engaged in willful misconduct. That term is not defined in the collective bargaining agreement. So it was up to the court to decide whether 404 trumps 401 in this particular case. Did Mr. Batista engage in willful misconduct? If so, does 404 permit Stuart to go ahead and terminate without the progressive discipline steps? The court also had to weigh in Section 602, which dealt with what steps or what recourse Stuart had in order to comply with the law on discrimination and harassment. And the district court did just that. The district court clearly felt that it needed to interpret those provisions. I think my opponent was asked during his time if the district court ever referenced or ever made that analysis or ever went through that interpretation. And it certainly did. And I believe it is page 32 of the record. I believe it's page 32. That's not quite right. I'm sorry. Page five of the motion for summary judgment order that is in the record includes a paragraph where the district court went through and did just that. It weighed those provisions of the CBA against one another. And it absolutely had to go through that analysis. There was no simple way to turn to the page, read aloud the sentence and have your answer. This was, which is very unlike Cramer. Cramer, to begin with, didn't even have provisions that were on point. There was no provision that governed what the employer had been doing with respect to the mirrors and the video cameras. And so, therefore, there was really nothing to interpret. That's very unlike this case where, again, the allegation is that Stewart didn't follow its policies because it didn't give progressive discipline. Well, we need to look to the collective bargaining agreement, see what provisions address that, see how they play off one another, determine whether Mr. Batista engaged in willful misconduct. The problem, and the interesting, this is kind of an interesting case, because the interesting problem is that the first sentence of what the district court says there is in itself. She says, Plaintiff argues that Stewart's failure to follow the progressive discipline provisions of the collective bargaining agreement is evidence of pretext. But Stewart didn't say anything about the collective bargaining agreement. Now, I understand. Oh, I'm sorry. Yes, plaintiff didn't say anything about the collective bargaining agreement. I'm sorry. I don't have in front of me either the handbook or the deposition. So it's hard for me to say exactly what was said. What was said? What did the plaintiff say about the failure to follow their own procedures? He did not testify to that subject. That subject came about. And remember, we went through many months of being in State court. This concept, this notion that we had violated our own policies came to light for the very first time in the summary judgment. Okay. And what was cited at that point? It was the argument that ---- I know what the argument was, but what was cited about it? I'm fairly certain it was not the employee handbook. I don't know that he specifically referenced the collective bargaining agreement. Oh, I know what it was. It was Mr. Batista's declaration where he simply said that he was familiar with policies at Stewart and that he was required to be given progressive discipline. He didn't cite to either the ---- he did not specifically rely on either. He didn't rely on the employee handbook or this. Right. And it came about in his declaration. Okay. But it's ---- everything you say that the district court said is true. She did say it, but she said it on the premise that he had made an argument that he didn't exactly make. That's ---- Well, again, we believe that he did, and we believe that for us to respond to that, we need to consult those. I understand. The other, I think, an interesting case to consult is the Audet case, which was decided by this Court. This was a case where, although it wasn't the California Fair Employment and Housing Act, it was an anti-discrimination statute out of Washington State. And in that case, this Court held that even though the claim was one for sex discrimination and retaliation under state law, nonetheless, those claims were preempted by Section 301. The reason was as follows. The Court held that or this Court held that resolving that case turned on the action that it took. And it had to do with the defendant not registering the plaintiffs. And the plaintiffs argued that their not being registered for certain work privileges was discriminatory and retaliatory. And the Court said we essentially cannot resolve this without looking to the collective bargaining agreement to see whether the employer had the right to do what it said. When was that case decided? 1999. Isn't it inconsistent with Kramer? Because Kramer says, I'm sorry, that defenses don't count. I mean, what's interesting about this case is it's not a defense issue. But that is a defense issue. I don't know. I don't believe it's inconsistent with Kramer at all. I think what happened here was this had this went directly to the heart of the defendant's legitimate nondiscriminatory reasons cited in response to a discrimination retaliation claim. The defendant said we took the action that we did because of the following reasons. And the only way to evaluate those reasons was to consult the collective bargaining agreement. That was not a defense? No, I wouldn't say that's a defense. That is just simply part of the McDonnell-Douglas burden shifting. You might be right about that. I don't know that that would be a defense. Our case is very similar. We offered the legitimate nondiscriminatory reason that we let him go when we did immediately because of the information we received from his coworkers. The only way to determine if we followed our own policies, which was the issue in Audet, is to look to the collective bargaining agreement to see whether we had the right to jump to termination without going through intermediate proceedings. Was this ever asked in the state court proceeding what you were relying on in asserting the policies and practices of Stewart? It never was because we filed our motion, Plano filed his opposition, and before we filed a reply, we removed the case to Federal court. So we were never heard by the state court judge on that issue. Well, it seems awfully odd that some way in the state court, it wasn't first determined what they, what Batista was relying on for policies and practices before all of a sudden you were able to remove. Well, we never got to hearing, which is why. And because of the timing of removal. Well, because you removed. Right. And because of the time, the 30-day timeline to remove, when we got the opposition, we analyzed it and decided to remove rather than wait for hearing. The interesting practical point of all this is it's kind of a crazy way to proceed. I mean, the case has been going on for two years in state court. The CBA had never reared its head. It didn't really rear its head now, exactly. And it certainly would have been more efficient for everybody concerned to just get this case done with. And instead, we're now, what, a couple years later, talking about something that could have and should have at least been teased out in state court. What was this really about? Again, it hit us like a ton of bricks. We never had faced that argument before. It was never raised before until the opposition. You know, I have to admit, to me, it kind of appears like Stewart felt the proceeding for going badly and, hooray, we've got a basis to remove and get it into the Federal Court. Well, it may look like that, but our motion papers were almost identical in Federal Court as they were in state court with the addition of this collective bargaining agreement issue. I see my time is up. If I could make one quick comment, and that is, Kramer also says that the test for are required, and those provisions have to be, must reasonably be said to be relevant. The provisions at issue do not need to be critical. They do not need to be the determining factor. They don't need to be the end-all, be-all analysis. They just simply need to, it just needs to be, it needs reasonably to be said that they are relevant to the analysis, and we believe here that they are. All right. Thank you. The matter is submitted, and the Court will recess until tomorrow morning at 9 a.m.
judges: Hug, Pregerson, Berzon